```
       IN THE UNITED STATES DISTRICT COURT
     FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

MICHAEL DAWKINS,              )
                              )
          Plaintiff,          )
                              )
     v.                       )     1:22-CV-299
                              )
TWANDA STALEY; FORSYTH COUNTY )
DEPARTMENT OF SOCIAL SERVICES,)
                              )
          Defendants.         )

### MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

*Pro se* Plaintiff Michael Dawkins brings this lawsuit against Defendants Twanda Staley and the Forsyth County Department of Social Services ("DSS") alleging that they violated his civil rights in state court proceedings involving his child support obligations pursuant to 42 U.S.C. § 1983, 18 U.S.C §§ 241 and 242, and the North Carolina Constitution. (Docs. 1, 1-1.) Defendants have moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docs. 10, 11). Dawkins responded in opposition. (Docs. 13, 14, 16.)

While the motion to dismiss was pending, Dawkins filed a document entitled "Memorandum of Law in Support of the United States' Motion for Partial Summary Judgment." (Doc. 17.) Defendants responded in opposition. (Docs. 18, 19.) For the reasons set forth below, Defendants' motion to dismiss will be granted, and the motion for summary judgment will be denied as

moot.

**I.   BACKGROUND**

The facts, viewed in the light most favorable to Dawkins as the non-moving party, show the following:

Dawkins is a party to an ongoing child support proceeding in the General Court of Justice, District Court Division, in Forsyth County, North Carolina.  (See Doc. 1-2.)[1]  On November 27, 2019, that court ordered Dawkins to pay $488 per month in child support.  (Id. at 2.)  Since then, Dawkins has apparently failed to comply with that order, not having made a single child support payment since January 19, 2017. (Doc. 1-2 at 2.)  As of March 1, 2022, he owed $24,158.45 in past due support, and $12,096 more in past due support related to a prior order issued by the same court.  (Id. at 1.)

On March 4, 2022, Defendant Staley - an attorney for Forsyth County Child Support Enforcement, a component of Defendant DSS - moved the Forsyth County District Court to order Dawkins "to appear

---

[1] The caption of the state court Order lists a Title IV-D case number "IV-D # 0007087607."  (Doc. 1-1 at 1.)  A Title "IV-D case means a case in which services have been applied for or are being provided by a child support enforcement agency established pursuant to Title IV-D of the Social Security Act as amended and this Article."  N.C. Gen. Stat. § 110-129(7) (2011); see Watauga Cnty. on behalf of McKiernan v. Shell, 826 S.E.2d 739, 741-42 (N.C. Ct. App. 2019).  In other words, "[a] Title IV-D case commonly refers to cases in which the child support enforcement agency is enforcing the child support order pursuant to Title IV-D of the Social Security Act."  Williams v. Wayne County Friend of Court, No. 16-cv-12888, 2017 WL 3944393, at *1 n.1 (E.D. Mich. Jul. 14, 2017).

and show cause" why he should not be held in contempt for his failure to pay child support. (Id. at 2.) On March 22, 2022, the court entered an "Order to Appear and Show Cause for Failure to Comply Support Order and Order to Produce Records." (Id. at 1.) In that order, the court found "probable cause to believe [Dawkins was] in contempt for failure to comply with" the November 27, 2019 child support order and ordered him "to appear in person [before the court] . . . to show cause why [he] should not be subject to income withholding or held in contempt of court for failing to comply with the lawful orders of this Court." (Id.) The court further ordered Dawkins to bring with him "all records and information relating to [his] employment and the amount and source of [his] disposable income." (Id.)

On April 18, 2022, two days before his scheduled court appearance, Dawkins filed this action, alleging that Staley and DSS violated his civil rights during the child support enforcement proceedings. (Doc. 1.) Dawkins's *pro se* complaint alleges that DSS and Staley violated his constitutional right to due process and his rights under the North Carolina Constitution by "fraudulent[ly]" attempting to enforce the child support order against him. (Doc. 1-1 at 6-7; see also id. at 3.) Dawkins's allegations are conclusory and rambling. In large part, he merely recites the text of various federal statutes and regulations, as well as various provisions of the North Carolina Constitution.

3

And then in conclusory fashion he claims that his rights pursuant to those provisions have been violated. Much of the complaint, for example, appears to take aim at Title IV-D of the Social Security Act, which addresses enforcement of child support obligations owed by noncustodial parents, 42 U.S.C. § 651, including collection and disbursements, 42 U.S.C. §§ 651-669b. Dawkins's allegations, liberally construed, contend that the child support enforcement proceedings initiated against him are illegitimate because Title IV-D - a joint federal and state program designed to enforce payment of child support[2] - "has never been passed into Positive Law and therefore imposes no obligation on anyone who does not volunteer to be subject to it." (Id. at 4.) Elsewhere, Dawkins invokes 18 U.S.C. §§ 241 and 242 – two federal criminal statutes - ostensibly to allege that Staley and DSS, by attempting to enforce the child support order against him, engaged in an illegal conspiracy meant to deprive him of certain constitutional rights. (Id. at 4-6.)

Dawkins seeks an order from this court that "all the TITLE IV-D contracts . . . cease and desist and that the rears [sic]

---

[2] When a state establishes a plan that meets certain Title IV-D requirements, such as creating programs for locating absent noncustodial parents, establishing paternity, and obtaining child and spousal support, see 42 U.S.C. § 652(a)(1), the federal government provides funds to that state to reimburse its operation of the plan, id. §§ 655(a)(1)(A), and 655(a)(2)(C). See Hodges v. Shalala, 121 F. Supp. 2d 854, 860 (D.S.C. 2000), aff'd sub nom. Hodges v. Thompson, 311 F.3d 316 (4th Cir. 2002); Hunt v. Hunt, 784 S.E.2d 219, 223 (N.C. Ct. App. 2016).

4

terminated" and that "STALEY do not contact the plaintiff never again regarding the Title IV-D schemes." (Id.)  He also asks that "FORSYTH COUNTY DSS/CPS, STALEY be ordered to pay the cost of court and restitution fines in the amount of $60,000 for the Title IV-D Cases that the Defendants fraudulent file [sic] against the Plaintiff, for depriving the Plaintiff of his right to due process, Constitutional rights and breaking the Federal laws." (Id.)[3]

On August 31, 2022, Defendants moved to dismiss the case pursuant to both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) arguing that: (1) Dawkins has failed to state a claim upon which relief can granted for an alleged violation of his rights under § 1983; (2) Dawkins's claims are barred by governmental immunity; (3) the court lacks subject matter jurisdiction under the Rooker-Feldman doctrine; and (4) the court lacks subject matter jurisdiction to adjudicate the claims under 18 U.S.C. §§ 241 and 242 because "no private civil cause of action for damages exists" under these statutes.  (Doc. 11.)  Dawkins responded in opposition.  (Docs. 13, 14, 16.)

On December 9, 2022, while Defendants' motion to dismiss was

---

[3] In his Amended Response in Opposition, Dawkins embellishes the conclusory allegations of his complaint by advancing several new arguments and theories of liability. (Doc. 16.) It is well-established, however, that "the complaint may not be amended by the briefs in opposition to a motion to dismiss." Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984); accord S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013).  Accordingly, the court will not consider these new allegations and contentions.

5

still pending, Dawkins filed a document entitled "Memorandum of Law in Support of United States' Motion for Partial Summary Judgment." (Doc. 17.) Defendants responded in opposition by filing another motion to dismiss, this one seeking "an order dismissing" Dawkins's putative summary judgment motion for failing to comply with this court's local rules. (Docs. 18, 19.)

The motions are now fully briefed and ready for resolution.

**II. ANALYSIS**

"When reviewing a pro se complaint, federal courts should examine carefully the plaintiff's factual allegations, no matter how inartfully pleaded, to determine whether they could provide a basis for relief. In addition, in order to determine whether the claim of a pro se plaintiff can withstand a motion to dismiss, it is appropriate to look beyond the face of the complaint to allegations made in any additional materials filed by the plaintiff." Armstrong v. Rolm A. Siemans Co., 129 F.3d 1258 (4th Cir. 1997) (citations omitted) (unpublished table decision).[4] However, the liberal construction of a pro se plaintiff's pleading does not require the court to ignore clear defects in pleading, Bustos v. Chamberlain, No. 3:09-1760-HMH-JRM, 2009 WL 2782238, at *2 (D.S.C. Aug. 27, 2009), or to "conjure up questions never

---

[4] Unpublished opinions of the Fourth Circuit are not precedential but are cited for their persuasive, but not controlling, authority. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

6

squarely presented in the complaint," Brice v. Jenkins, 489 F. Supp. 2d 538, 541 (E.D. Va. 2007) (internal quotation marks and citation omitted). Nor does it require that the court become an advocate for the unrepresented party. Weller v. Dep't of Soc. Servs., 901 F.2d 387, 391 (4th Cir. 1990); see Warren v. City of Greensboro, 280 F. Supp. 3d 780, 784 (M.D.N.C. 2017), aff'd sub nom. Warren v. Tolbert, 717 F. App'x 281 (4th Cir. 2018).

### A. Rooker-Feldman Doctrine & Younger Abstention

Defendants contend that the court lacks subject matter jurisdiction under the Rooker-Feldman doctrine. (Doc. 11 at 7.) The Rooker-Feldman doctrine is a jurisdictional bar that "prohibits the United States District Courts, with the exception of habeas corpus actions, from 'sit[ting] in direct review of state court decisions.'" See Jordahl v. Democratic Party of Va., 122 F.3d 192, 199 (4th Cir. 1997) (quoting D.C Court of Appeals v. Feldman, 460 U.S. 462, 483 n.16 (1983)). In Exxon Mobil Corporation v. Saudi Basic Industries Corporation, 544 U.S. 280 (2005), however, the Supreme Court made clear that federal jurisdiction is not barred by the Rooker–Feldman doctrine if suit "was filed before the end of the state courts' appeal process." Guttman v. Khalsa, 446 F.3d 1027, 1029, 1031-32 (10th Cir. 2006) (citing Exxon Mobil, 544 U.S. at 290-91). Here, Dawkins's state court proceedings have not concluded; accordingly, the Rooker–Feldman doctrine does not apply. See Guttman, 446 F.3d at 1031-

7

32; accord Nicholson v. Shafe, 558 F.3d 1266, 1279 (11th Cir. 2009); Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 24 (1st Cir. 2005). As explained below, however, the Younger abstention doctrine nevertheless obliges the court to abstain from hearing Dawkins's claims. See Chapman v. Oklahoma, 472 F.3d 747, 749 (10th Cir. 2006) (applying Younger abstention rather than Rooker-Feldman where Plaintiff's state court proceedings had not yet concluded).[5]

The Younger abstention doctrine is an exception to the general rule that federal courts must decide cases within their jurisdiction. Younger v. Harris, 401 U.S. 37 (1971); see Huffman v. Pursue, Ltd., 420 U.S. 592, 603-04 (1975) (extending Younger to pending civil state court proceedings). The doctrine "rests on the fundamental precepts of equity and comity," Robinson v. Thomas, 855 F.3d 278, 285 (4th Cir. 2017), and requires that federal courts dismiss cases rather than intervene in pending state proceedings. See Nivens v. Gilchrist, 319 F.3d 151, 153 (4th Cir. 2003) ("Nivens I").

The Younger inquiry proceeds in two steps. See Sprint Communications Inc. v. Jacobs, 571 U.S. 69, 73 (2013); Air Evac EMS, Inc. v. McVey, 37 F.4th 89, 96, n.2 (4th Cir. 2022) (observing

---

[5] Although abstention was not specifically addressed by the parties, the court may raise it sua sponte. See Bellotti v. Baird, 428 U.S. 132, 143 n.10 (1976).

8

that "undergoing both steps of the analysis is important."). First, the court considers whether the state proceeding at issue is one of the three types of proceedings that warrant Younger abstention: (1) an "ongoing state criminal prosecutions," (2) "certain 'civil enforcement proceedings'" that are "'akin to a criminal prosecution' in 'important respects,'" and (3) "pending 'civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions.'" Sprint, 571 U.S. at 78 (omission in original) (quoting New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 368 (1989); Huffman, 420 U.S. at 604); see McVey, 37 F.4th at 96. Second, if the proceeding fits into one of these categories, then abstention is appropriate "if there is (1) an ongoing state judicial proceeding, instituted prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit." Moore v. City of Asheville, N.C., 396 F.3d 385, 390 (4th Cir. 2005) (quoting Nivens I, 319 F.3d at 153); see McVey, 37 F.4th at 96 (referring to these as the "Middlesex factors").

Even if both steps are satisfied, however, extraordinary circumstances may nevertheless allow federal court intervention if the state brought the action in bad faith or to harass, where the

9

state statute is "flagrantly and patently" unconstitutional, or where other "extraordinary circumstances" exist that present a threat of immediate and irreparable injury. Younger 401 U.S. at 49-54; see McVey, 37 F.4th at 96; Nivens v. Gilchrist, 444 F.3d 237, 241 (4th Cir. 2006) ("Nivens II").

Dawkins's suit meets the criteria for Younger abstention. First, this case involves a challenge to Sprint's third category of proceedings: pending state civil proceedings involving orders "uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint, 571 U.S. at 73 (internal quotation marks omitted). "The prototypical examples of situations falling within this third category are Juidice v. Vail, 430 U.S. 327 (1977), and Pennzoil [Co. v. Texaco Inc., 481 U.S. 1 (1987)]." Aaron v. O'Connor, 914 F.3d 1010, 1016 (6th Cir. 2019). In Juidice, the Supreme Court held that, pursuant to Younger, federal courts should not interfere in state court proceedings "in which the State's contempt process is involved," 430 U.S. at 335, because the contempt process "stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory," id. at 336 n.12. In Pennzoil, the Supreme Court abstained from interfering with the ability of Texas state courts to require the posting of appeal bonds because of the "importance to the States of enforcing the orders and judgments of their courts." 481 U.S. at 13. Together, Juidice and Pennzoil
10

establish that pending state proceedings fit within Sprint's third category if a federal plaintiff's demand for relief would "directly or indirectly thwart state court compliance processes." Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC, 953 F.3d 660, 671 (10th Cir. 2020).

Here, Dawkins's federal lawsuit falls into Sprint's third category because it implicates how North Carolina courts manage their own child support proceedings – a subject in which the states have an especially strong interest. See Moore v. Sims, 442 U.S. 415, 435 (1979) (explaining that "[f]amily relations are a traditional area of state concern.") On November 27, 2019, the state court initially ordered Dawkins to pay child support in the amount of $448 per month (Doc. 1-2 at 2), but after Dawkins failed to make any payments for more than two years, the court issued another order to show cause why he should not be held in contempt. (Doc. 1-2 at 1.) Dawkins filed this suit in federal district court in an effort to derail and nullify the state court's efforts, asking this court to "cease and desist" his "TITLE IV-D contracts," to "terminate[]" his past due balance, and to order "STALEY [to] not contact the plaintiff never again regarding the Title IV-D schemes." (Doc. 1-1 at 6.) Both state court orders which Dawkins seeks to avoid undoubtedly qualify as being "uniquely in furtherance of the state courts' ability to perform their judicial functions." Sprint, 571 U.S. at 78; see Matter of Alamance Cnty.

11

Ct. Facilities, 405 S.E.2d 125, 129, 137 (N.C. 1991) (citations omitted)(explaining that the court's "inherent power" to "do all things that are reasonably necessary for the proper administration of justice" includes the power to issue "an order to show cause"); Massey v. Massey, 323 S.E.2d 451, 454 (N.C. Ct. App. 1984) (explaining that parties have "an obligation to observe [a court] order [to pay child support] until it [is] lawfully changed."); McMiller v. McMiller, 336 S.E.2d 134, 135 (N.C. Ct. App. 1985) (citation omitted)(noting that "[c]ivil contempt proceedings are a proper method of enforcing orders for payment of child support.").

Consequently, this case fits comfortably into Sprint's third category of ongoing state proceedings that warrant Younger abstention. See Pennzoil, 481 U.S. at 14 (cautioning that the district court should "stay its hand" where there are pending state proceedings involving the enforcement of orders and judgments out of "respect for the ability of state courts to resolve federal questions presented in state-court litigation"); Parker v. Turner, 626 F.2d 1, 8 (6th Cir. 1980) (noting that "the state's interest in preserving the integrity of its contempt proceedings, as well as its domestic relations cases, requires us to analyze this case under Younger"); Gibson v. Lopez, No. 21-CV-02610-WJM-NYW, 2022 WL 2158986, at *6 (D. Colo. Jun. 15, 2022) (finding plaintiff's federal challenge to state child support enforcement proceedings

12

fell within Sprint's third category and holding that Younger abstention was appropriate).

The second step of the Younger inquiry requires consideration of the "additional factors" laid out in Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 432 (1982): (1) whether there is "an ongoing state judicial proceeding"; (2) whether that state proceeding "implicate[s] important state interests"; and (3) whether that state proceeding provides "an adequate opportunity ... to raise constitutional challenges." Middlesex, 457 U.S. at 432; see Sprint, 571 U.S. at 81; McVey, 37 F.4th at 96. Each of these factors is met here.

First, Dawkins is subject to an ongoing child support order, which is to be monitored by the North Carolina state court system and is subject to modification at any time. See Catawba Cnty. ex rel. Rackley v. Loggins, 804 S.E.2d 474, 478 (N.C. 2017) (citation omitted) (explaining that "[a] judicial decree in a child custody and support matter is subject to alteration upon a change of circumstances affecting the welfare of the child and, therefore, is not final in nature."); N.C. Gen. Stat. § 50-13.7(a) (2021) ("An order of a court of this State for support of a minor child may be modified or vacated at any time"). Second, states have a recognized interest in "ordering and enforcing child support obligations." Delaney v. District of Columbia, 659 F. Supp. 2d 185, 194 (D.D.C. 2009); see Briggman v. Virginia, Dep't of Soc.

13

Servs., Div. of Child Support Enf't, 526 F. Supp. 2d 590, 604 (W.D. Va. 2007) (citations omitted) ("It is well established that child support matters implicate important state interests."); McAllister v. North Carolina, No. 5:10-CV-79-D, 2011 WL 883166, at *5 (E.D.N.C. Mar. 11, 2011) (citations omitted) ("[T]he importance of the State's interest in child support matters cannot be questioned."). Third, Dawkins has had adequate opportunity to raise his constitutional claims in state court. The Supreme Court has made clear that, in the area of domestic relations, "state processes are [equal] to the task of accommodating the various interests and deciding the constitutional questions that may arise in child-welfare litigation." Moore, 442 U.S. at 435. There is no reason to depart from that observation here. See Delaney, 659 F. Supp. 2d. at 194 ("[A] party in a child support proceeding can raise any federal constitutional claims he may have."); McAllister, 2011 WL 883166, at *5 ("[B]ecause the Cumberland County District Court retains jurisdiction over enforcement of the child support order, McAllister continues to have a venue to assert any constitutional claim he wishes to raise."); Price v. Biggs, 846 S.E.2d 781, 785-86 (N.C. Ct. App. 2020) (considering Fifth and Fourteenth Amendment due process challenge in child support modification action).

Finally, no extraordinary circumstances exist to warrant the relief Dawkins seeks. Though "federal intervention may be proper

where there is a showing of bad faith or harassment by state officials," Robinson, 855 F.3d at 286 (internal quotation marks omitted), Dawkins's vague allegations of bad faith are clearly insufficient to trigger this exception.[6] See Weitzel v. Div. of Occupational & Pro. Licensing of Dep't of Com. of State of Utah, 240 F.3d 871, 877 (10th Cir. 2001) (citation omitted) ("[I]t is the plaintiff's 'heavy burden' to overcome the bar of Younger abstention by setting forth more than mere allegations of bad faith or harassment."); Crenshaw v. Supreme Ct. of Indiana, 170 F.3d 725, 729 (7th Cir. 1999) (stating that mere allegations of bad faith without supporting facts are insufficient to trigger Younger bad faith exception). Nor does Dawkins claim that Title IV-D of the Social Security Act, see 42 U.S.C. § 651 et seq., which supplies the enforcement mechanism for child support obligations, is "flagrantly unconstitutional."[7]

---

[6] See Doc. 1-1 at 3 ("FORSYTH COUNTY DSS/CPS, STALEY are attempting to employ one of the four nefarious schemes by fraud, concealment, and misrepresentation of material facts you are implemented to obtain it.") (errors in original); id. at 4-5 (claiming that DSS and Staley "knowingly failed" to make certain disclosures regarding the Title VI-D program with the intent to deceive).

[7] Dawkins's only allegation regarding "Title IV-D" of the Social Security Act is that it "has never been passed into Positive Law and therefore imposes no obligation on anyone who does not volunteer to be subject to it." (Doc. 1-1 at 4.) This is obviously an invalid basis to avoid the law. See Ryan v. Bilby, 764 F.2d 1325, 1328 (9th Cir. 1985) (rejecting same argument and finding that "Congress's failure to enact a title into positive law has only evidentiary significance and does not render the underlying enactment invalid or unenforceable"); Proctor v. Title 4-D, 318 F. Supp. 3d 337, 346, n.7 (D.D.C. 2018).

15

Accordingly, the court finds that <u>Younger</u> abstention is appropriate, and Dawkins's federal claims are therefore dismissed with prejudice. <u>See</u> <u>Nivens II</u>, 444 F.3d at 247 ("[W]hen a district court abstains from a case based on <u>Younger</u>, it should typically dismiss the case with prejudice; not on the merits.").

### B. Even Were <u>Younger</u> Abstention Not Appropriate, Dawkins Fails to State a Federal Claim Upon Which Relief Can Be Granted

Alternatively, even if <u>Younger</u> abstention were not appropriate, Dawkins's complaint clearly fails to state a federal claim upon which relief can be granted. Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557). A motion to dismiss pursuant to Rule 12(b)(6) "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true." <u>Francis v. Giacomelli</u>, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted). In ruling on a motion to dismiss, courts may consider documents attached to either the complaint or the motion to dismiss without converting the motion into one for summary judgment so

long as the documents are "integral to the complaint and authentic." Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 164 (4th Cir. 2016).

First, the § 1983 claims against DSS fail as a matter of law because Dawkins's complaint is completely devoid of any allegations of a municipal policy or custom that caused his injury.[8] See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 694-95 (1978); Starbuck v. Williamsburg James City Cnty. Sch. Bd., 28 F.4th 529, 532-33 (4th Cir. 2022) (internal quotation marks omitted) ("Monell permits suits against a municipality for a federal constitutional deprivation only when the municipality undertook the allegedly unconstitutional action pursuant to an official policy or custom."). For the same reason, the same claims against Staley in her official capacity fail. See Monell, 436 U.S. at 690, n.55 (noting official capacity claims "represent only another way of pleading an action against an entity of which an officer is an agent"); Huggins v. Prince George's Cnty., Md., 683 F.3d 525, 532, n.3 (4th Cir. 2012) (treating the "County and the Officials sued in their official capacities as the County"); Hogan v. Cherokee Cnty., 519 F. Supp. 3d 263, 283 (W.D.N.C. 2021)

---

[8] For purposes of determining liability under Monell, DSS is treated as a municipality. See Monell, 436 U.S. at 662, n.4 (explaining that the New York City Department of Social Services "enjoys the same status as New York City" for purposes of liability under § 1983).

17

(finding § 1983 claims against the county-defendant "redundant" of those made against county employees in their official capacity).

Next, the § 1983 claims made against Staley in her individual capacity also fail because Dawkins's factual allegations do not give rise to the reasonable inference that Staley violated his constitutional rights. Aside from the vague and cursory suggestion that Staley "fraudulent[ly]" filed the motion for order to show cause in Dawkins's child custody case (Doc. 1-1 at 6), the complaint is devoid of any factual allegations describing what occurred, how Staley caused Dawkins's injury, and what constitutional harm Dawkins incurred. A well-pleaded complaint, however, must offer more than "labels and conclusions," or "naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678. And while the court is mindful of Dawkins's pro se status, "generosity is not fantasy," Bender v. Suburban Hosp., Inc., 159 F.3d 186, 192 (4th Cir. 1998), and the court will not plead Dawkins's claim for him by "construct[ing] full blown claims from sentence fragments," Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

Dawkins also alleges violations of 18 U.S.C. §§ 241 and 242. (Doc. 1-1 at 4-6.) These claims necessarily fail because "these are criminal statutes that do not provide for a private right of action and are thus not enforceable through a civil action." Andrews v. Heaton, 483 F.3d 1070, 1076 (10th Cir. 2007) (Gorsuch,

18

J.); accord Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989); Tribble v. Reedy, 888 F.2d 1387 (4th Cir. 1989) (unpublished table decision); Booth v. Henson, 290 F. Appx. 919, 920 (6th Cir. 2008) (unpublished).

Finally, Dawkins's remaining claim is one under the North Carolina Constitution. The court, in its discretion, declines to exercise supplemental jurisdiction over that claim now that all federal claims over which it had original jurisdiction have been dismissed. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.")

## III. CONCLUSION

For the reasons stated, therefore,

IT IS ORDERED that Defendants' motion to dismiss (Doc. 10) is GRANTED and Dawkins's complaint (Doc. 1) is DISMISSED WITH PREJUDICE, except for his state law claims under the North Carolina Constitution, which is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Dawkins's motion for summary judgment (Doc. 17) is DENIED as moot.

/s/ Thomas D. Schroeder
United States District Judge

January 27, 2023